UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Zebulon Perry<br>　　　　　Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.;<br>Equifax Information Services, LLC;<br>TransUnion, LLC; and DOES 1 through<br>100 inclusive,<br>　　　　　Defendants. | CASE NO. 5:23-cv-281 |

COMES NOW Plaintiff **ZEBULON PERRY**, individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of the Plaintiff's debt.

2. Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and TransUnion ("TransUnion") are inaccurately reporting Plaintiff's Capital One Auto Finance ("Capital One") account as included in or discharged through bankruptcy. Further, Defendants are reporting inaccurate and incomplete payment history.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

4. A pervasive and fundamental misunderstanding presently thrives in the United States regarding the long-term impact that filing a consumer bankruptcy has on the consumer's creditworthiness. Specifically, consumers tend to believe that since a bankruptcy can be reported

on their credit report for ten (10) years, their creditworthiness will be ruined for the same length of time. This is not true.

5. The *majority* of consumer debtors file a consumer bankruptcy to *raise* their FICO Score and remedy their poor creditworthiness.

6. In fact, it is possible for consumer debtors to obtain a 700 FICO Score as soon as twelve (12) months from filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys the consumer's creditworthiness of ten (10) years; however, to perpetuate this bankruptcy myth, creditors intentionally and routinely ignore industry standards for accurately reporting bankruptcies, as well as the debts included in those bankruptcies, to keep consumers' credit scores low and their interest rates high.

8. Creditors know that deviating from recognized credit reporting standards will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

9. This was not the intent of Congress when it enacted the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

12. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

13. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over Defendants under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that Equifax, Experian, and TransUnion are incorrectly reporting that Plaintiff's Capital One account was discharged through bankruptcy. Further, Equifax, Experian, and TransUnion are incompletely and inaccurately reporting payment history on the Capital One account.

15. Plaintiff alleges he has timely made all payments since filing his bankruptcy through paying the debt in full in May 2022.

16. Plaintiff alleges that the Capital One account was always paid as agreed during his Chapter 13 bankruptcy.

17. Plaintiff alleges that the Capital One debt was paid in full and fully satisfied in or about May 2022.

18. Plaintiff alleges no debt on the Capital One account was discharged in bankruptcy.

19. Plaintiff alleges that it is patently incorrect and misleading for a debt which was paid in full and fully satisfied to be reported in a manner that appears as if it was discharged in bankruptcy.

20. Plaintiff alleges that each and every Defendant is familiar with the FCRA requirements and credit reporting industry standards and subscribes thereto.

21. Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

22. Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard for the FCRA requirements and/or credit reporting industry standards to purposefully undermine the Plaintiff's ability to repair his Credit Score.

23. In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

24. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   FICO, Inc.**

25. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

26. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions.[1]

27. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

28. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

29. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

30. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

31. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

32. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

33. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

34. There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

35. Each of the five (5) factors is weighted differently by FICO.

36. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

37. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information,

---

[1] While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. See https://www.myfico.com (a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").

the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

38. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

39. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

40. FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

41. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and FICO uses the filing date, under both Chapters, to determine how long ago the bankruptcy took place.

42. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." *See* https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

43. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

**B.     e-OSCAR**

44.     e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

45.     When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

46.     The ACDV contains within it codes next to certain data fields associated with a credit file e.g., "Account Type" "07" (07 to a Charge Account).

47.     When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

48.     When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

49.     For clarification, an AUD, or other regular transmission, is sent when the data furnisher initiates reporting on a consumer's account (e.g., opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

**C.     Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator**

50.     When a consumer files bankruptcy, certain credit reporting industry standards exist.

51.     Certain data is regularly expected and calculated by FICO when determining a consumer's creditworthiness.

52.     The Consumer Information Indicator ("CII") is a critical field in the format that indicates a special condition that applies to a specific consumer.

53.     The CII must be reported on only the consumer to whom the information applies.

54.     It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

55.     CII Code "D" indicates that a Chapter 13 petition has been filed and is active, but no discharge has been entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a tradeline. Such reporting alerts any potential lender that the account is no longer in a collectable status and is being handled by a Chapter 13 trustee.

56. The CII Code "Q" removes previously reported Bankruptcy Indicator (A through P and Z) or personal Receivership Indicator. This code is used when the bankruptcy case is complete, but the debt was not discharged in the bankruptcy. The Account was not discharged in the bankruptcy pursuant to 11 U.S.C. §1328(a)(1) and 11 U.S.C. § 1322(b)(5).

57. The CII field is a critical field for consumers as it directly relates and impacts a consumer's creditworthiness.

58. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

59. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference than if the appropriate CII indicator were reported.

60. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

61. The bankruptcy's impact on a consumer's FICO Score lessens with the passage of time.

**D.   Plaintiff Paid the Debt in Full via his Chapter 13 Bankruptcy Plan**

62. Plaintiff filed a voluntary petition for Chapter 13 bankruptcy on May 16, 2017, in order to repair his creditworthiness and Credit Score.

63. The Plan provided Plaintiff pay the Capital One account via his Plan, and the Plan was confirmed on June 29, 2017.

64. Plaintiff's bankruptcy was completed on May 17, 2022.

**E.   Plaintiff's Credit Reports Contain Inaccurate and Adverse Tradelines, which Plaintiff Disputed to no Avail**

65. On August 5, 2022, Plaintiff ordered an Experian credit report, a TransUnion credit report, and an Equifax credit report to ensure proper reporting by his creditors (the "August 5 Credit Reports").

66. Plaintiff noticed adverse tradelines in his August 5 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with the FCRA or credit reporting industry standards.

67. Plaintiff then disputed the inaccurate tradelines regarding the account with Capital One via certified mail to Experian, TransUnion, and Equifax on or about November 30, 2022 (the "Dispute Letters").

68. Plaintiff's Dispute Letters specifically put Experian on notice that his account was paid in full and should be reflecting the full payment history, and it should be updated.

69. Plaintiff's Dispute Letters specifically put Equifax on notice that his account was paid in full and should be reflecting the full payment history, and it should be updated.

70. Plaintiff's Dispute Letters specifically put TransUnion on notice that his account was paid in full and should be reflecting the full payment history, and it should be updated.

71. Plaintiff's Dispute Letters included the Trustee's Final Report to support his contention that the account was paid in full, including principal and interest.

72. Plaintiff's Dispute Letters also detailed what was perceived to be problematic about the Capital One account reporting, addressing the tradeline individually.

73. Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the account as required by the FCRA.

74. Plaintiff is informed and believes that Experian, TransUnion, Equifax each received the Dispute Letters and, in response, each failed to send the dispute to Capital One, as the data furnisher, via an ACDV through e-OSCAR.

75. On January 12, 2023, Plaintiff ordered a second Experian credit, a second TransUnion Credit Report, and a second Equifax credit report to determine if his account was updated.

### a. Inaccuracy – Capital One Tradelines

76. Despite actual knowledge, Experian continued to report Plaintiff's Capital One account, beginning in 620752XXXXXXXXXXX, with a payment status of "Debt included in or discharged through Bankruptcy Chapter 13", a "BK" for bankruptcy in the payment history for May 2017, and with incomplete and inaccurate payment history.

77. Despite actual knowledge, Equifax continued to report Plaintiff's Capital One account, beginning in 620752XXXXXXXXXXX, with a payment status of "Included in Chapter 13", and with incomplete and inaccurate payment history.

78. Despite actual knowledge, TransUnion continued to report Plaintiff's Capital One account, beginning in 620752XXXXXXXXXXX, with a payment status of "Wage earner or similar plan", and with incomplete and inaccurate payment history.

79. Experian's reporting is patently incorrect and misleading as the debt was paid in full.

80. Equifax's reporting is patently incorrect and misleading as the debt was paid in full.

81. TransUnion's reporting is patently incorrect and misleading as the debt was paid in full.

82. By continuing to report the account as included in bankruptcy even after the bankruptcy has concluded, it appears as if the debt was discharged. When coupling this with the incomplete payment history, creditors viewing these tradelines would be misled to believe the debt was discharged.

83. Reporting an account that was in good standing and paid in full in a manner which appears as if it were discharged in bankruptcy is patently inaccurate.

84. Reporting inaccurate payment history or reporting an account wholly without payment history when payments were made is patently inaccurate.

85. Further, reporting the Plaintiff's account with a payment status of included in or discharged through bankruptcy is patently inaccurate as Plaintiff's account was maintained through the Plaintiff's bankruptcy plan, which has since ended. In addition, these inaccurate and incomplete tradelines are misleading in a way that can adversely affect credit decisions.

86. Plaintiff alleges that Experian did not investigate whether the account was provided for in the plan, paid in full prior to discharge, or whether Plaintiff had been making timely payments since filing his bankruptcy.

87. Plaintiff alleges that Equifax did not investigate whether the account was provided for in the plan, paid in full prior to discharge, or whether Plaintiff had been making timely payments since filing his bankruptcy.

88. Plaintiff alleges that TransUnion did not investigate whether the account was provided for in the plan, paid in full prior to discharge, or whether Plaintiff had been making timely payments since filing his bankruptcy.

89. Experian was provided notice that Plaintiff was disputing the inaccurate and misleading information, but Experian failed to conduct a reasonable investigation of the information as required by the FCRA.

90. Equifax was provided notice that Plaintiff was disputing the inaccurate and misleading information, but Equifax failed to conduct a reasonable investigation of the information as required by the FCRA.

91. TransUnion was provided notice that Plaintiff was disputing the inaccurate and misleading information, but TransUnion failed to conduct a reasonable investigation of the information as required by the FCRA.

92. Based on Plaintiff's dispute and the provided payment verification, Experian should have known that Plaintiff's account was not discharged upon the resolution of his bankruptcy, that the account was paid in full and closed, and that Plaintiff has maintained a positive payment history that was not properly reported.

93. Based on Plaintiff's dispute and the provided payment verification, Equifax should have known that Plaintiff's account was not discharged upon the resolution of his bankruptcy, that the account was paid in full and closed, and that Plaintiff has maintained a positive payment history that was not properly reported.

94. Based on Plaintiff's dispute and the provided payment verification, TransUnion should have known that Plaintiff's account was not discharged upon the resolution of his bankruptcy, that the account was paid in full and closed, and that Plaintiff has maintained a positive payment history that was not properly reported.

95. The most basic investigation would include a simple review of provided documentation on the account compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

96. Plaintiff alleges that Experian did not review if its reporting complied with the FCRA, the dispute letter it received from Plaintiff, or the Trustee's Final Report concerning Plaintiff's account.

97. If Experian reviewed such standards and records, Experian would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

98. Experian should have updated the account to show paid, removed the bankruptcy notations, and should have reported the payment history.

99. Plaintiff alleges that Equifax did not review if its reporting complied with the FCRA, the dispute letter it received from Plaintiff, or the Trustee's Final Report concerning Plaintiff's account.

100. If Equifax reviewed such standards and records, Equifax would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

101. Equifax should have updated the account to show paid, removed the bankruptcy notations, and should have reported the payment history.

102. Plaintiff alleges that TransUnion did not review if its reporting complied with the FCRA, the dispute letter it received from Plaintiff, or the Trustee's Final Report concerning Plaintiff's account.

103. If TransUnion reviewed such standards and records, TransUnion would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

104. TransUnion should have updated the account to show paid, removed the bankruptcy notations, and should have reported the payment history.

105. By continuing to report Plaintiff's account as described herein, it incorrectly appears to third parties viewing Plaintiff's credit report(s) that he stopped paying the account, has not made payments in years, and that the account was discharged in his bankruptcy.

106. As this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

107. As payment history (including payment status) makes up thirty-five percent (35%) of a consumer's FICO Score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to poring through each tradeline of every account listed to obtain context), the incorrect payment status and payment history reported by each Experian, Equifax, and TransUnion is lowering of Plaintiff's Credit Score, which adversely affects her ability to obtain credit.

108. A discharged debt is treated far more derogatorily by a potential lender than one which was paid in full and reflects a consumer's ability to timely make payments month after month, year after year.

109. Further, even if a lender did look through the tradelines, based upon Experian, Equifax, and TransUnion's individual reporting, it appears as if Plaintiff has not made a payment on this account, and that it was discharged in his bankruptcy; all of which is inaccurate.

110. The lack of investigation and reporting of inaccurate and incomplete information by Experian is unreasonable.

111. The lack of investigation and reporting of inaccurate and incomplete information by Equifax is unreasonable.

112. The lack of investigation and reporting of inaccurate and incomplete information by TransUnion is unreasonable.

**F.   Damages**

113. Plaintiff pulled his credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

114. As a result of the incorrect reporting, Plaintiff has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit Reporting Act and the power of this Court to preserve and perpetuate his rights to accurate credit reporting as intended by Congress.

115. Plaintiff has been denied credit, offered credit at higher than normal interest rates, and is unable to rebuild his credit based on the inaccurate reporting by Experian. Further, Plaintiff's diminished creditworthiness, resulting from Experian's inaccurate reporting has caused him to abandon his intentions to apply for certain credit.

116. Experian's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

117. Plaintiff has been denied credit, offered credit at higher than normal interest rates, and is unable to rebuild his credit based on the inaccurate reporting by Equifax. Further, Plaintiff's diminished creditworthiness, resulting from Equifax's inaccurate reporting has caused him to abandon his intentions to apply for certain credit.

118. Equifax's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

119. Plaintiff has been denied credit, offered credit at higher than normal interest rates, and is unable to rebuild his credit based on the inaccurate reporting by TransUnion. Further, Plaintiff's diminished creditworthiness, resulting from TransUnion's inaccurate reporting has caused him to abandon his intentions to apply for certain credit.

120. TransUnion's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## FIRST CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))

### (Against Defendants and Does 1-100)

121. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  Experian, Equifax, and TransUnion Each Failed to Assure Credit Reporting Accuracy**

122. Experian, Equifax, and TransUnion (collectively the "CRA Defendants") each violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

123. Had Experian maintained reasonable procedures to assure maximum accuracy, Experian would never have allowed Capital One to report the account as described herein.

124. Experian knew, or should have known, based on Plaintiff's dispute and provided Final Trustee's Report, that the Capital One account was not discharged, was paid in full, and therefore the payment status and history were reporting inaccurately and incompletely. Further, Experian knew, or should have known, that this inaccurate and incomplete reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

125. Had Equifax maintained reasonable procedures to assure maximum accuracy, Equifax would never have allowed Capital One to report the account as described herein.

126. Equifax knew, or should have known, based on Plaintiff's dispute and provided Final Trustee's Report, that the Capital One account status was not discharged in bankruptcy, but was paid in full, and therefore the payment status and history were reporting inaccurately and incompletely. Further, Equifax knew, or should have known, that this inaccurate and incomplete reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

127. Had TransUnion maintained reasonable procedures to assure maximum accuracy, TransUnion would never have allowed Capital One to report the account as described herein.

128. TransUnion knew, or should have known, based on Plaintiff's dispute and provided Final Trustee's Report, that the Capital One account was not discharged, was paid in full, and therefore the payment status and history were reporting inaccurately and incompletely. Further,

TransUnion knew, or should have known, that this inaccurate and incomplete reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

129. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's credit worthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the inaccurate reporting each of the CRA Defendants allowed.

130. As a result of the CRA Defendants' independent violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B.    Willful Violations**

131. The CRA Defendants' independent violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

132. The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding the disputes. Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

133. To the extent the CRA Defendants do send consumer disputes, the CRA Defendants send these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

134. The CRA Defendants' respective employees receive little to no training concerning how to accurately report consumer debt.

135. Instead, the CRA Defendants' respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

136. The CRA Defendants' respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

137. The CRA Defendants have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

138. As a result of the CRA Defendants' independent violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

139. The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

140. In the alternative, each of the CRA Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

141. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from each of the CRA Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(1))

### (Against Defendants and Does 1-100)

142. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  The CRA Defendants Each Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

143. Pursuant to 15 U.S.C. § 1681i(a)(1), Experian was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Capital One reporting.

144. Pursuant to 15 U.S.C. § 1681i(a)(1), Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Capital One reporting.

145. Pursuant to 15 U.S.C. § 1681i(a)(1), TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Capital One reporting.

146. Thus, each of the CRA Defendants failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

147. The CRA Defendants are not passive entities bound to report whatever information a data furnisher provides.

148. Plaintiff alleges the CRA Defendants are readily familiar with the FCRA requirements and credit reporting industry standards.

149. Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

150. The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

151. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that Capital One was not reporting the account at issue correctly.

152. Had Experian conducted a proper investigation it could have updated the account status to paid and updated the payment history to indicate that the account was paid. However, Experian continued to report the account as described herein.

153. Plaintiff alleges that Experian did not send an ACDV to Capital One to confirm accurate reporting on its account. Despite receiving the Dispute Letters providing notice of the inaccuracies, Experian did not delete or correct the tradeline or conduct an investigation.

154. Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that Capital One was not reporting the account at issue correctly.

155. Had Equifax conducted a proper investigation it could have updated the account status to paid and updated the payment history to indicate that the account was paid. However, Equifax continued to report the account as described herein.

156. Plaintiff alleges that Equifax did not send an ACDV to Capital One to confirm accurate reporting on its account. Despite receiving the Dispute Letters providing notice of the inaccuracies, Equifax did not delete or correct the tradeline or conduct an investigation.

157. TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that Capital One was not reporting the account at issue correctly.

158. Had TransUnion conducted a proper investigation it could have updated the account status to paid and updated the payment history to indicate that the account was paid. However, TransUnion continued to report the account as described herein.

159. Plaintiff alleges that TransUnion did not send an ACDV to Capital One to confirm accurate reporting on its account. Despite receiving the Dispute Letters providing notice of the inaccuracies, TransUnion did not delete or correct the tradeline or conduct an investigation.

160. The CRA Defendants, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

161. In the alternative, if the CRA Defendants deemed Plaintiff's Dispute Letters "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), the CRA Defendants failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from any of the CRA Defendants, Plaintiff alleges each of the CRA Defendants deemed the Dispute Letters valid, and thus triggered each of their obligation under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which they did not comply.

## THIRD CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))

### (Against Defendants and Does 1-100)

162. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     The CRA Defendants Each Failed to Review and Consider all Relevant Information**

163. The CRA Defendants each violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs.

164. The CRA Defendants' independent violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.     Willful Violations**

165. The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

166. In the alternative, each of the CRA Defendants were negligent in failing to review

and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

167. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against Defendants and Does 1-100)

168. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     The CRA Defendants Each Failed to Delete Disputed and Inaccurate Information**

169. The CRA Defendants each violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

170. The CRA Defendants' independent violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.     Willful Violations**

171. The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

172. In the alternative, each of the CRA Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

173. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

174. WHEREFORE, Plaintiff prays for judgment as follows:

   a. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

   b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

    c.  Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

    d.  Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

    e.  For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq.*; and

    f.  For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: March 7, 2023

*/s/ Kyle Schumacher*
Kyle Schumacher
kyle@schumacherlane.com
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

**SCHUMACHER LANE PLLC**

Dated: March 7, 2023            */s/ Kyle Schumacher*
                                Kyle Schumacher
                                Attorney for Plaintiffs